| AUSA: | Rosemary Gardey | Telephone: (313) 226-9100 |
|---|---|---|
| Special Agent: | Michael S. Parsons | Telephone: (313) 202-3400 |

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| United States of America | |
|---|---|
| v. | Case: 2:21−mj−30179 |
| | Assigned To : Unassigned |
| | Assign. Date : 4/14/2021 |
| Tezmonta EVANS | CMP: USA v EVANS (MAW) |

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __Feb. 2, 9, 18, 2020 & March 9, 10, 2021__ in the county of __Washtenaw and Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Felon in Possession of a Firearm |
| 18 U.S.C. 924(c) | Use of Firearm During Drug Trafficking Crime |
| 21 U.S.C. 841(a)(1) | Distribution of and Possession with Intent to Distribute Controlled Substance |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Michael S. Parsons - ATF
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __April 14, 2021__

_____
Judge's signature

City and state: __Detroit, Michigan__          Honorable Elizabeth Stafford, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Michael S. Parsons, being duly sworn, do hereby state the following:

### I. INTRODUCTION

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been a Special Agent since September of 2000. I have been involved in numerous investigations regarding firearms, firearms licensing, and narcotic laws resulting in successful federal prosecutions.

2. The statements contained in this affidavit are based on my personal knowledge, my review of written police reports by Livingston and Washtenaw Narcotics Enforcement Team ("LAWNET") Detectives, and information provided to me by and/or through other law enforcement agents, investigators, and individuals with knowledge of this matter. This affidavit does not provide every detail known to law enforcement about this investigation.

3. This affidavit provides information necessary to establish probable cause that Tezmonta EVANS (XX/XX/1990) has violated Title 18, U.S.C. § 922(g)(1) – felon in possession of a firearm, Title 18, U.S.C.

§ 924(c) – Use of Firearm During Drug Trafficking Crime, and Title 21 U.S.C. § 841(a)(1), the distribution of and possession with intent to distribute controlled substances.

## II.   PROBABLE CAUSE

4. Since January 2020, LAWNET Detectives, have been investigating the suspected narcotics distribution activities of Tezmonta EVANS.

## UNDERCOVER TRANSACTION #1

5. On February 02, 2020, LAWNET Confidential Informant (hereafter referred to as "CI"), along with local and state law enforcement conducted an undercover purchase of suspected fentanyl from EVANS, in the Charter Township of Ypsilanti, Michigan.  Prior to the purchase, CI was searched for any contraband or currency with negative results.  CI was then issued pre-recorded government funds, and instructed to attempt to purchase fentanyl from EVANS.

6. CI placed a phone call to EVANS to arrange the narcotics purchase.  EVANS instructed CI to meet him in the area of Michigan Ave. and Holmes, located in Ypsilanti, Michigan.  The CI arrived at the location and after a brief amount of time a black Cadillac arrived.  The

CI exited the CI vehicle and entered EVANS' vehicle. CI gave EVANS the pre-recorded government funds and in turn EVANS gave the CI the suspected fentanyl. CI then exited EVANS' vehicle and entered the CI vehicle. CI then left the parking lot and returned to the predetermined meet spot. Multiple LAWNET detectives had eyes on the CI during the entire transaction. CI turned over the suspected narcotics to an Ann Arbor police detective and was again searched for any contraband or currency with negative results. CI identified EVANS as the individual who sold the CI the suspected fentanyl. This concluded the controlled purchase.

7. LAWNET TruNarc field tested the suspected fentanyl that was retrieved from CI, which tested positive for fentanyl.

## UNDERCOVER TRANSACTION #2

8. On February 09, 2020, CI, along with local and state law enforcement conducted an undercover purchase of suspected fentanyl from EVANS, in the Charter Township of Ypsilanti, Michigan. Prior to the purchase, CI was searched for any contraband or currency with negative results. CI was then issued pre-recorded government funds, and instructed to attempt to purchase fentanyl from EVANS.

9. CI placed a phone call to EVANS to arrange the narcotics purchase. EVANS instructed CI to meet him in the area of Ecorse & Harris, located in Ypsilanti, Michigan. The CI arrived at the location and after a brief amount of time a black Cadillac arrived. The CI exited the CI vehicle and entered EVANS' vehicle. CI gave EVANS the pre-recorded government funds and in turn EVANS gave the CI the suspected fentanyl. CI then exited EVANS' vehicle and entered the CI vehicle. CI then left the parking lot and returned to the predetermined meet spot. Multiple LAWNET detectives had eyes on the CI during the entire transaction. CI turned over the suspected narcotics to an Ann Arbor police officer and was again searched for any contraband or currency with negative results. CI identified EVANS as the individual who sold the CI the suspected fentanyl. This concluded the controlled purchase.

LAWNET TruNarc field tested the suspected fentanyl that was retrieved from CI, which tested positive for fentanyl.

## **UNDERCOVER TRANSACTION #3**

10.     On February 18, 2020, CI, along with local and state law enforcement conducted an undercover purchase of suspected fentanyl from EVANS, in the Charter Township of Ypsilanti, Michigan.  Prior to the purchase, CI was searched for any contraband or currency with negative results.  CI was then issued pre-recorded government funds, and instructed to attempt to purchase fentanyl from EVANS.

11.     CI placed a phone call to EVANS to arrange the narcotics purchase.  EVANS instructed CI to meet him in the area of Ecorse & Michigan, located in Ypsilanti, Michigan.  The CI arrived at the location and after a brief amount of time a white GMC Acadia SUV arrived with an unknown black female driver and EVANS in the passenger seat. The CI exited the CI vehicle and went to the passenger side of the Acadia and spoke with EVANS.  CI gave EVANS the pre-recorded government funds and in turn EVANS gave the CI the suspected fentanyl.  CI then left the passenger side of the Acadia and entered the CI vehicle.  CI then left the parking lot and returned to the predetermined meet spot.  CI turned over the suspected narcotics to the Ann Arbor police officer and was again searched for any contraband or

currency with negative results. CI identified EVANS as the individual who sold the CI the suspected fentanyl. This concluded the controlled purchase.

12. LAWNET TruNarc field tested the suspected fentanyl that was retrieved from CI, which tested positive for fentanyl.

## UNDERCOVER TRANSACTION #4

13. On March 09, 2021, CI, along with local and state law enforcement conducted an undercover purchase of suspected fentanyl from EVANS, in the Charter Township of Ypsilanti, Michigan. Prior to the purchase, CI was searched for any contraband or currency with negative results. CI was then issued pre-recorded government funds, and instructed to attempt to purchase fentanyl from EVANS.

14. CI placed a phone call to EVANS to arrange the narcotics purchase. EVANS instructed CI to meet him in the area of Holmes and Michigan Ave., located in Ypsilanti, Michigan. The CI at the location and after a brief amount of time a black Cadillac arrived driven by EVANS. The CI exited the CI vehicle and went to the black Cadillac and spoke with EVANS. CI gave EVANS the pre-recorded government funds and in turn EVANS gave the CI the suspected fentanyl. CI then

left and entered the CI vehicle.  CI then left the parking lot and returned to the predetermined meet spot.  Multiple LAWNET detectives also identified EVANS.  CI turned over the suspected narcotics to the Ann Arbor police officer and was again searched for any contraband or currency with negative results.  CI identified EVANS as the individual who sold the CI the suspected fentanyl. This concluded the controlled purchase.

15. LAWNET TruNarc field tested the suspected fentanyl that was retrieved from CI, which tested positive for fentanyl.

16. On March 10, 2021, at approximately 05:03 am, Michigan State Police Emergency Services Team (EST) and LAWNET detectives executed a state search warrant at XXX4 Academy Drive, Canton, Michigan for the purpose of recovering evidence of EVANS' narcotics trafficking activities.

17. After EST knocked and announced their presence and purpose, they made entry into the residence. Tezmonta EVANS was located in the master bedroom sleeping on the bed.  Once EST secured EVANS and three other individuals located at the residence, they cleared the location and begun their search for evidence.

18. During the search for evidence, detectives seized a Spike's Tactical Model ST15 Crusader, .223 caliber rifle with an obliterated serial number, ammunition, firearm accessories, 25 grams of suspected crack cocaine, 17 grams of suspected heroin/fentanyl, and $13,000 in cash from the master bedroom and master bedroom closet. Detectives also seized a cocaine press in the top drawer of the master bath vanity.

19. Based on my training, experience, knowledge of the investigation, the cocaine press, the quantity of narcotics, and the seized cash, I believe EVANS possessed with intent to distribute the controlled substances. The quantity of the drugs alone is consistent with the intent to distribute and not mere possession for personal use/consumption.

20. Based on my training and experience, the possession of the firearm furthered his drug trafficking activities. The rifle was strategically located on the top shelf of the master bedroom closet next to the safe that contained $13,000 and near the cocaine and fentanyl, so that it was quickly and easily available for use. The rifle was loaded with 26 rounds of ammunition and ready to fire with a round in the chamber. The firearm with an obliterated serial number is the type

used by drug traffickers. The firearm allowed him, if necessary, to protect not only the drugs but the proceeds from the drug sales as well. Defendant is a felon and was prohibited from possessing the firearm.

21. A criminal history check was conducted on EVANS, which revealed that he has been convicted of the following felonies:

a. 2008 – Controlled Substance – Possess less than 25 grams.
b. 2008 – Police Officer Assaulting/Resisting/Obstructing.
c. 2010 – Police Officer – Fleeing – Third Degree.
d. 2010 – Controlled Substance—DEL/MFG less than 50 grams.
e. 2010 – Controlled Substance—DEL/MFR less than 50 grams.
f. 2010 – Controlled Substance—Possession Analogues.
g. 2010 – Possession of a Firearm by a Felon
h. 2010 – Weapons Felony Firearm
i. 2014 – Controlled Substance – Possession Analogues.
j. 2014 – Controlled Substance – DEL/MFG less than 50 grams.
k. 2014 – Controlled Substance – Possess less than 25 grams.
l. 2016 – Weapons Felony Firearm.
m. 2016 – Assault with Intent to do Great Bodily Harm less than Murder.

22. EVANS' felony convictions in each of the above cases were obtained by guilty plea or plea of nolo contendere. I am aware that the Michigan Court Rules require a court to directly advise a defendant of the maximum possible penalty before accepting a guilty plea or plea of nolo contendere. Therefore, probable cause exists that EVANS knew, at

the time he possessed the firearm, he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

23. Based on EVANS' prior conviction for a violent felony, that is for assault with intent to do great bodily harm less than murder, and two prior serious drug offense convictions, EVANS is an Armed Career Criminal as that is defined under 18 U.S.C. § 924(e).

24. I am an expert in the Interstate Nexus of Firearms. The Spike's Tactical Model ST15 Crusader, .223 caliber rifle, recovered from EVANS, was manufactured outside the State of Michigan, thereby travelling in interstate commerce.

### III. CONCLUSION

25. Probable cause exists that Tezmonta EVANS, a convicted felon, was in possession of the above described firearm in the City of Canton in the Eastern District of Michigan, said firearm having travelled in interstate commerce, in violation of Title 18 U.S.C. § 922(g)(1). Probable cause also exists that Tezmonta EVANS possessed fentanyl and cocaine base with intent to distribute, and distributed fentanyl in violation of Title 21 U.S.C. § 841(a)(1). Probable cause also

exists that Tezmonta EVANS possessed a firearm in furtherance of a drug trafficking crime in violation of Title 18 U.S.C. § 924(c)(1)(A).

_____
Michael S. Parsons
Special Agent, ATF

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
Honorable Elizabeth A. Stafford
United States Magistrate Judge

Date:   April 14, 2021

-11-